IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOXED FOODS COMPANY, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA CAPITAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 20-cv-04571-CRB<br><br>**AMENDED ORDER GRANTING CALIFORNIA CAPITAL INSURANCE COMPANY'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE** |

COVID-19 poses an existential threat to small businesses throughout the United States. Since March, the San Francisco Bay Area alone has seen almost 8,300 businesses close, 4,000 of which shuttered permanently. See Leonardo Castañeda, The Bay Area's small business closure crisis is already here, The Mercury News (Sept. 22, 2020 7:00 AM), https://www.mercurynews.com/2020/09/22/the-bay-areas-small-business-closure-crisis-is-already-here/. To survive the catastrophic effects of COVID-19, businesses have filed close to 1,300 federal lawsuits seeking coverage for business interruption losses. See Covid Coverage Litigation Tracker, University of Pennsylvania Carey School of Law, https://cclt.law.upenn.edu/ (last visited Oct. 23, 2020). Absent government relief or assistance, these small businesses risk permanent closure. Plaintiffs are among those seeking relief through their insurance policy. But while the Court sympathizes with Plaintiffs' circumstances, the Court cannot ignore that the insurance policy excludes coverage for losses caused by viruses, like COVID-19. Thus, the Court GRANTS Defendant's motion to dismiss for the reasons outlined below.

## I. BACKGROUND

Boxed Foods Company, LLC and Gourmet Provisions, LLC (collectively, "Plaintiffs") seek a declaration that they are entitled to business loss coverage under the Business Income, Extra Expense, and Civil Authority coverage provisions of their insurance policy agreement with California Capital Insurance Company ("Defendant") and Capital Insurance Group.[1] Compl. (dkt. 1) ¶¶ 1–4, 79. The insurance policy (the "Policy") provides coverage for business interruption losses that occurred between August 31, 2019 and August 31, 2020. Id. ¶ 11.

On March 4, 2020, California declared a State of Emergency in response to the outbreak of COVID-19. Id. ¶ 46. On March 11, California issued an initial order restricting large gatherings, but followed up on March 16 with an order prohibiting large gatherings altogether. Id. ¶ 47. In response to California's March 11 order, Plaintiffs shuttered their San Francisco restaurants: B Restaurant Bar and the Pin Up All-Star Diner. Compl. ¶ 55. On March 19, California issued another order (collectively, the "Civil Authority Orders") requiring all businesses to cease non-essential operations. Id. ¶ 48.

Plaintiffs allege that they were not able to operate their restaurants as a direct consequence of COVID-19 and the Civil Authority Orders. Id. ¶ 49. Plaintiffs submitted a claim to Defendant on March 7 for the losses associated with not being able to operate their restaurants. Id. ¶ 13. Defendant concluded that the Policy did not encompass COVID-19 as a covered cause of loss, and therefore denied Plaintiffs coverage. See generally, Compl. Ex. 2 (dkt. 1-2).

Plaintiffs filed a class action complaint against Defendant seeking declarations that:

- the Civil Authority Orders constitute a prohibition of access to Plaintiffs' properties;
- the Civil Authority Orders fall within the "prohibited access" coverage as defined in the policy;

---

[1] Plaintiffs voluntarily dismissed Capital Insurance Group from the case. See Voluntary Dismissal (dkt. 14).

- the exclusion of "Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiffs" because the Civil Authority Orders proximately caused business losses;
- the Civil Authority Orders trigger coverage under the Policy;
- the Policy "provides coverage to Plaintiffs for any current and future civil authority closures of their businesses . . . due to physical loss [sic] or damage directly or indirectly from the COVID-19 pandemic under the Civil Authority coverage parameters;" and
- the Policy provides "business income coverage in the event that COVID-19" directly or indirectly caused loss or damage at or within the immediate area of Plaintiffs' insured properties. Compl. ¶ 79.

On August 31, Defendant filed a motion to dismiss Plaintiffs' complaint. See Mot. (dkt. 19).[2]

The Court has jurisdiction over this putative class pursuant to 28 U.S.C. 1332(d)(2) because the amount in controversy exceeds $5 million and at least one member in the proposed class is diverse from Defendant.

## II.   LEGAL STANDARD

### A.   12(b)(6) Motion to Dismiss.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[2] Defendant asks the Court to take judicial notice of various government documents, pleadings, and hearing transcripts. Def. Requests for Judicial Notice (dkt. 19-2, 26-2). That is appropriate. A court can take judicial notice of documents properly submitted with the complaint or upon which the complaint necessarily relies if the materials' "authenticity . . . is not contested" and comprise "matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).

3

is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

### B. Insurance Policy Interpretation.

Under California law, the interpretation of an insurance policy is a question of law for the courts to determine. See Waller v. Trucks Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995). "The insurer bears the burden of proving . . . the applicability of an exclusion . . . ." State Farm Fire & Cas. Co. v. Martin, 872 F.2d 319, 321 (9th Cir. 1989). The court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." Waller, 11 Cal. 4th at 18 (citation omitted). The plain language of the insurance policy governs its interpretation. See Bank of the W. v. Superior Ct., 2 Cal. 4th 1254, 1264–65 (1992). A policy provision is ambiguous if it is "capable of two or more constructions, both of which are reasonable." Waller, 11 Cal. 4th at 18. If the language is ambiguous or unclear, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Bank of the W., 2 Cal. 4th at 1264–65. Courts should "not strain to create an ambiguity where none exists." Waller, 11 Cal. 4th at 18–19.

### III. DISCUSSION

Defendant argues that the Pathogenic Organisms Exclusion (hereinafter "Virus Exclusion")[3] excludes coverage for the losses alleged in the complaint, which necessitates

---

[3] "'Pathogenic Organisms' means any . . . virus . . . ." Policy (dkt. 1-1) at 43.

4

dismissing the complaint in its entirety. Mot. at 1–2.[4]  The Virus Exclusion states:

> We do not insure for loss or damage caused by, resulting from, contributing to or made worse by the actual, alleged or threatened presence of any pathogenic organism, all whether direct or indirect, proximate or remote, or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy . . . .

Policy at 43.

The Court agrees that the Virus Exclusion bars Plaintiffs' claim.  Plaintiffs' arguments fail to persuade the Court that: (1) the Virus Exclusion does not apply to the Civil Authority coverage provision, Opp. (dkt. 22) at 7–8; (2) the Virus Exclusion is ambiguous and does not apply to pandemics, id. at 8–9; (3) denying coverage under the Virus Exclusion would be contrary to the reasonable expectation of the parties, id. at 10–11; and (4) Defendant's motion is not ripe because the case requires discovery to ascertain the scope and validity of the Virus Exclusion.  Id. at 12–13.

### A. The Virus Exclusion Precludes Plaintiffs' Claim under the Civil Authority Coverage Provision.

An insured entity must allege the following in order to trigger coverage under a policy's Civil Authority provision: (1) civil authority prohibits access to the insured property, (2) due to physical loss of or damage to other property, and (3) a Covered Cause of Loss, i.e., "a covered risk of physical loss or damage," caused the loss or damage to the property.  Santa Monica Amusements, LLC v. Royal Indem. Co., B155253, 2002 WL 31429795, at *2 (Cal. Ct. App. Oct. 31, 2002)).

Plaintiffs' claim collapses under the third requirement because the Policy's Virus Exclusion excludes viruses as a Covered Cause of Loss, thereby precluding Plaintiffs' claim for business income losses and extra expenses under the Civil Authority provision. Plaintiffs argue that the exclusion does not apply to the Civil Authority provision because "the payout for civil authority coverage comes from business income or extra expense

---

[4] Defendant separately argues that the losses in the complaint fall outside the scope of the Policy's Business Income, Extra Expenses, and Civil Authority coverage provisions.  See Mot. at 1.  The Court does not address Defendant's second argument, because the first argument is sufficient to grant dismissal.

5

caused by Civil Authority orders, not solely the property damage caused by the virus." Opp. at 7 (emphasis included). Plaintiffs also argue that the Virus Exclusion does not apply to business income loss and extra expense covered by the Civil Authority provision because the Civil Authority Orders caused Plaintiffs' loss of business income and extra expenses, not COVID-19. Id. Both arguments fail.

The Civil Authority provision states in pertinent part:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

Policy at 57 (emphases added).

Plaintiffs attempt to distinguish the Virus Exclusion as only applying to property damage, whereas the Civil Authority provision applies to business income and extra expenses. Opp. at 7. But nothing in the Virus Exclusion suggests that it is limited to property damage. See Policy at 43. To the contrary, the Policy specifically states when an exclusion does not apply to certain provisions, see, e.g., id. at 105 ("This exclusion does not apply to the Business Income coverage or to the Extra Expense coverage."), and the Virus Exclusion contains no such limitation. The Virus Exclusion precludes coverage for any loss "direct[ly] or indirect[ly]" caused by a virus because the Policy determined that viruses fall outside the scope of the Policy's Covered Causes of Loss. See id. at 43, 51, 104; see Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc., 20-cv-04434 JSC, 2020 WL 5642483, at *2–3 (N.D. Cal. Sept. 22, 2020) (concluding that a policy's civil authority, business income, and extra expense coverage provisions did not cover COVID-19 related civil authority orders because the policy's virus exclusion precluded such claims). Plaintiffs seek business losses and extra expenses that stem from Civil Authority Orders, but California issued these orders as a direct response to COVID-19, Compl. ¶¶ 33, 61—"a cause of loss that falls squarely within the Virus Exclusion." Franklin EWC, Inc., 2020 WL 5642483, at *2.

6

Plaintiffs also argue that the Civil Authority Orders caused their business losses, "not solely" COVID-19. Opp. at 7–8. They argue that the tenuous connection between the excluded cause of lost—COVID-19—the civil authority orders, and the resulting business income losses and extra expenses, cannot preclude coverage. See id. Yet not only does the Virus Exclusion apply when a virus indirectly causes or contributes to the cause of loss, see Policy at 43, but under California law, COVID-19 is the "efficient proximate cause" of Plaintiffs' losses. See Garvey v. State Farm Fire & Cas. Co., 48 Cal. 3d 395 (1989). An "efficient proximate cause" is a cause of loss that predominates and sets the other cause of loss in motion. See id. at 402–03. When loss can be attributed to two causes—a covered and an excluded cause—coverage only exists if the efficient proximate cause of the damage is covered under the policy. See id. at 403. The Civil Authority Orders would not exist absent the presence of COVID-19; COVID-19 is therefore the efficient proximate of Plaintiffs' losses. Thus, the Virus Exclusion precludes Plaintiffs' claim for business income losses and extra expenses under the Civil Authority provision.[5]

### B. The Virus Exclusion Is Not Ambiguous.

Plaintiffs argue that the Virus Exclusion is ambiguous because the absence of the word "pandemic" implicitly creates two reasonable interpretations of the Virus Exclusion: (1) that the exclusion applies to all viruses, no matter how widespread; or (2) that the exclusion applies to stand-alone viruses, but not viruses that escalate into a pandemic. See Opp. at 9–10. However, the second interpretation is unreasonable because the Virus Exclusion lacks any ambiguity.

First, Plaintiffs cite no authority supporting their argument that the absence of language makes a policy ambiguous. The California Supreme Court has concluded the

---

[5] As discussed above, the Virus Exclusion does not distinguish between property damage and business income losses. The Virus Exclusion therefore applies equally to Plaintiffs' claim under the Business Income and Extra Expense coverage provisions. Like the Civil Authority provision, the Business Income and Extra Expense provisions provide coverage for "loss or damage . . . caused by or result from a Covered Cause of Loss." See Policy at 55, 57 (emphasis included). Thus, the Virus Exclusion precludes Plaintiffs' claim under the Business Income and Extra Expense provisions because viruses, like COVID-19, do not constitute a Covered Cause of Loss. Contra Opp. at 7, 20–21.

7

opposite, "The absence from a policy of a . . . word . . . does not by itself . . . necessarily create an ambiguity." Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal. 4th 854, 866 (1993).

Second, the word "pandemic" describes a disease's geographic prevalence, but it does not replace disease as the harm-causing agent. See Oxford English Dictionary (3rd ed., 2005). Plaintiffs provide no support for their argument that insurers must specify the magnitude of an excluded cause of loss in order to avoid ambiguity. See Opp. at 8. The Virus Exclusion's alleged failure to specify how widespread a disease must become to trigger the exclusion does not demonstrate that the exclusion is ambiguous.

Third, the second interpretation also effectively nullifies the plain language of the Virus Exclusion. Courts interpreting a policy must give effect to every term in the policy so that no term is rendered meaningless. See Collin v. American Empire Ins. Co., 21 Cal. App. 4th 787, 818 (1994). The Virus Exclusion contemplates situations where a virus indirectly contributes to or worsens a loss. See Policy at 43. Even if the Court accepts Plaintiffs' distinction between a stand-alone virus and a pandemic, only COVID-19 can cause the COVID-19 pandemic and subsequently, civil authority orders and business income losses. COVID-19 remains the "indirect" cause of the insured's harm, even if the exclusion did not contemplate the scale of COVID-19. See id. The second interpretation therefore renders the use of "indirect" meaningless.

Thus, the Virus Exclusion is only subject to one reasonable interpretation: that coverage does not extend to any claim premised on virus-induced damage, regardless of the virus's magnitude. See Franklin EWC, Inc., 2020 WL 5642483, at *2–3.

### C. Reasonable Expectations Doctrine Does Not Apply.

Plaintiffs cite extrinsic evidence to argue that denying coverage under the Virus Exclusion would be contrary to the reasonable expectations of the parties. Opp. at 10–11 (citing ISO Circular LI-CF-2006-175, New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria, ISO (July 6, 2006), https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf.). But courts do not evaluate the reasonable expectations

8

doctrine when a policy's language is clear and unambiguous. See, e.g., Bank of the W., 2 Cal. 4th at 1265 ("[A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations." (emphasis added)).[6] Because the Virus Exclusion is unambiguous, see supra III.B, the Court does not evaluate the reasonable expectations of the parties.

### D. Discovery is Unnecessary to Determine the Scope and Validity of the Virus Exclusion.

Even if a contract is unambiguous, California courts consider extrinsic evidence when the evidence "is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 37 (1968) ("Drayage"). Such consideration includes evaluating evidence of the parties' intentions. See id. at 38. However, an insurer moving to dismiss based on policy language may "establish conclusively that this language unambiguously negates beyond reasonable controversy the construction alleged in the body of the complaint." Palacin v. Allstate Ins. Co., 119 Cal. App. 4th 855, 862 (2004). To do so, the court must conditionally consider extrinsic evidence "alleged in the complaint, to determine if it would be relevant to prove a meaning to which the language of the instrument is reasonably susceptible." George v. Auto. Club of S. Cal., 201 Cal. App. 4th 1112, 1122 (2011). None of Plaintiffs' alleged extrinsic evidence suggests a reasonable alternative construction of the Virus Exclusion.

First, Plaintiffs argue that Defendant could not have intended for the exclusion to encompass pandemics because Defendant allegedly borrowed Insurances Services Office's

---

[6] California courts have reaffirmed that the reasonable expectations analysis does not apply when a policy's language is unambiguous. See, e.g., Williams v. Cal. Physicians' Serv., 72 Cal. App. 4th 722, 738 (1999) ("[W]here contractual language is clear and unequivocal, the subscriber may only reasonably expect the coverage afforded by the plain language of the contract."); Ananda Church of Self-Realization v. Mass. Bay Ins. Co., 95 Cal. App. 4th 1273, 1279 n.2 (2002) ("The [reasonable expectations] doctrine is triggered only where a policy provision or exclusion is uncertain or ambiguous, in which case the court's inquiry would turn to what a reasonable purchaser of the policy would expect."); Lyons v. Fire Ins. Exch., 161 Cal. App. 4th 880, 885 (2008) ("[W]here there is no ambiguity or uncertainty in the coverage provisions, the insured cannot reasonably expect a defense.").

("ISO") standardized language that ISO drafted before the COVID-19 pandemic. See Opp. at 13. Plaintiffs allege little, if any, evidence of Defendant's intent, instead they rely on evidence of ISO's intent and attribute ISO's intent to Defendant. See Compl. ¶¶ 21–23. Notwithstanding that Plaintiffs have not cited any authority permitting the Court to use evidence of third-party intent to infer Defendant's intent, the evidence of ISO's intent indicates that the Virus Exclusion contemplates highly infectious diseases. For example, the complaint alleges that ISO created its Virus Exclusion in response to the early 2000s SARS outbreak, id. ¶¶ 21–22, which suggests that both ISO and Defendant's Virus Exclusion account for highly infectious diseases, such as COVID-19. Plaintiffs contend that the opposite is true: SARS was not a pandemic, and therefore the Virus Exclusion cannot apply to pandemics. See id. ¶ 22; Opp. at 13. But as sources in the complaint acknowledge, state regulators and insurer representatives, like ISO, sought to introduce new virus exclusions to account for potential pandemic diseases like SARS. Compl. ¶ 23 (citing Richard P. Lewis, et al., Here we go again: Virus exclusion for COVID-19 and insurers, PropertyCasualty360 (Apr. 7, 2020) https://www.propertycasualty360.com/2020/04/07/here-we-go-again-virus-exclusion-for-covid-19-and-insurers/?slreturn=20200907134604). Even if Defendant based its Virus Exclusion on ISO's standardized language, such language contemplates widespread diseases like SARS and COVID-19.

Second, Plaintiffs argue that "the Court should consider statements made to insurance regulators to determine" whether insurers and regulators "intended to exclude" losses related to the pandemic. Opp. at 13. But the complaint only alleges that ISO made statements to regulators, not Defendant. Compl. ¶ 23. The Court cannot consider statements that have not been alleged in the complaint. See George, 201 Cal. App. 4th at 1122 ("[T]he court must conditionally consider the parol evidence alleged in the complaint to determine if it would be relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (emphasis added)). Further, even if the Court attributes ISO's communications with state regulators to Defendant, both the complaint and the sources it relies on acknowledge that the widespread outbreak of SARS prompted ISO and state regulators to agree to a new virus exclusion. Compl. ¶¶ 22–23 (citing Lewis, et al., supra.). Thus, both the complaint and parol evidence suggest that state regulators

10

intended to exclude coverage for damages caused by a pandemic.

Third, Plaintiffs allege that ISO fraudulently misled state regulators about the scope of its Virus Exclusion to induce them to approve it. Id. ¶ 23. Plaintiffs attempt to use ISO's alleged misrepresentations—the substance of which is unknown—to argue that regulators did not intend for the Virus Exclusion to exclude widespread viruses. See id. However, extrinsic evidence "may not be used to show that words in contracts mean the exact opposite of their ordinary meaning." ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co., 17 Cal. App. 4th 1773, 1790–91 (1993). Even if ISO mispresented the purpose and scope of its Virus Exclusion, Plaintiffs' theory requires the Court to construe Defendant's plain, unambiguous Virus Exclusion to mean the exact opposite of its ordinary meaning. Neither California law nor federal courts interpreting Virus Exclusions, permit such an outcome. See, e.g., id.; Turek Enter., Inc. v. State Farm Mut. Auto. Ins. Co., 20-11655, 2020 WL 5258484, at *9 (E.D. Mich. Sept. 3, 2020) ("[E]ven if Defendants misrepresented the purpose and extent of the Virus Exclusion in 2006, the plain, unambiguous meaning of the Virus Exclusion today negates coverage."). Further, ISO's alleged improper conduct cannot change Defendant's Virus exclusion because the language in Defendant's Virus Exclusion is materially different from ISO's Virus Exclusion. Compare Compl. ¶ 24 ("[L]oss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.")[7] with Policy at 43 ("[L]oss or damage caused by, resulting from, contributing to or made worse by the actual, alleged or threatened presence of any pathogenic organism, all whether direct or indirect, proximate or remote, or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy, except as provided under section A.").

Thus, while California law permits parties to introduce extrinsic evidence that may clarify the meaning of an insurance policy, none of Plaintiffs' proposed evidence "is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." Drayage, 69 Cal. 2d

---

[7] Plaintiffs do not cite the source of the quoted excerpt in Compl. ¶ 24, but a review of other cases confirms that Plaintiffs drew the quoted language directly from ISO's Virus Exclusion. See Turek Enter., Inc., 2020 WL 5258484, at *9 n.13; 10E, LLC v. Travelers Indem. Co. of Conn., 2:20-cv-04418-SVW-AS, 2020 WL 5359653, at *1 (C.D. Cal. Sept. 2, 2020).

11

at 37 (emphasis added). Plaintiffs have failed to demonstrate that discovery is necessary to determine the scope of the Policy's Virus Exclusion, and as a result, the Virus Exclusion bars Plaintiffs' claim for business interruption coverage.[8]

## IV. CONCLUSION

If a court does dismiss a complaint for failure to state a claim, it should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court has discretion to deny leave to amend due to, among other things, "futility of amendment." Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). The Court initially issued an order dismissing Plaintiffs' complaint without prejudice. Order (dkt. 33). However, the Court recognizes that any attempt to amend the Complaint would be futile considering the breadth of the Virus Exclusion. Accordingly, the Court GRANTS Defendant's motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: October 27, 2020

CHARLES R. BREYER
United States District Judge

---

[8] The Court's holding should not be construed to necessarily apply to all virus exclusions. The Virus Exclusion casts an exceptionally wide net relative to other virus exclusions because it lacks relevant limitations and ambiguous language. Compare Policy at 47 with Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd., 6:20-cv-1174-Orl-22EJK, 2020 WL 5939172, at *3 (M.D. Fla. Sept. 24, 2020) (involving a virus exclusion that contained ambiguous language and potentially permitted the plaintiff's claim).